IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| CANADIAN STANDARDS ASSOCIATION, | § § § | |
| *Plaintiff*, | § § | |
| v. | § § | No. 1:20-cv-01160-DAE |
| P.S. KNIGHT CO., LTD.; PS KNIGHT AMERICAS, INC.; and GORDON KNIGHT, | § § § § | |
| *Defendants*. | | |

ORDER (1) ADOPTING REPORT AND RECOMMENDATION AND
(2) GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION
FOR ATTORNEYS' FEES AND COSTS

Before the Court is the Report and Recommendation ("Report") of U.S. Magistrate Judge Susan Hightower, issued on March 12, 2025. (Dkt. # 99), recommending the Court deny an award of attorneys' fees and award $1,707.35 in costs to Defendants P.S. Knight Co., LTD, PS Knight Americas, Inc., and Gordon Knight ("Defendants") after prevailing in this copyright contempt litigation against Plaintiff Canadian Standards Association ("CSA"). Defendants timely objected to the Report on March 26, 2025 (Dkt. # 101), and CSA filed a response to those objections on April 9, 2025 (Dkt. # 102).

The Court finds this matter suitable for disposition without a hearing. After conducting a de novo review of the objected-to portions of the Recommendation and reviewing the unobjected-to portions for clear error, the

1

Court **ADOPTS** the Recommendation in its entirety. Accordingly, Defendants' Motion for Attorneys' Fees and Costs is **GRANTED IN PART** and **DENIED IN PART**. (Dkt. # 93.)

## BACKGROUND

This case arises from CSA's claims against Defendants for copyright infringement based on Defendants' use of CSA's Canadian Electrical Code. (Dkt. # 31.) CSA pursued litigation in both Canadian and U.S. courts, prevailing in the Canadian proceedings. (Id.) In the U.S. action, the Court entered judgment in CSA's favor; however, the Fifth Circuit reversed, holding that under Veeck v. Southern Bldg. Code Congress Int'l, Inc., 293 F.3d 791 (5th Cir. 2002), laws and codes incorporated into law are not subject to copyright protection. (Dkts. # 49, 51, 72.) The Fifth Circuit vacated the Court's injunction and remanded with instructions to enter summary judgment for Defendants and dismiss CSA's copyright infringement claim. Canadian Standards Ass'n v. P.S. Knight Co., 112 F.4th 298, 307 (5th Cir. 2024).

In October 2024, Defendants filed a Motion for Attorneys' Fees and Costs, seeking $252,283.50 in attorneys' fees and $1,727.15 in costs incurred during years of litigation. (Dkt. # 93.) Defendants alleged that: (1) CSA's suit was frivolous; (2) CSA should have known their claims lacked merit in light of the Fifth Circuit's decision in Veeck; (3) CSA is part of a group with a pattern of

2

repeatedly filing meritless litigation on similar issues; and (4) CSA used overly aggressive tactics during litigation proceedings. (Id. at 1–2.) In their Opposition, CSA argued that the lawsuit was reasonable because no U.S. court had previously ruled on whether foreign codes codified into foreign law are subject to copyright protection; and CSA acted in good faith without any bad motive in bringing the suit. (Dkt. # 95.)

After reviewing the briefings and record, Judge Hightower recommended that this Court award $1,707.35 in costs and deny an award of attorneys' fees, finding that the Fogerty factors–reasonableness of the parties' positions, motivation of the parties, and the need to advance considerations of compensation and deterrence–weighed against awarding attorneys' fees because CSA brought suit in good faith and the legal question presented a close issue of first impression rather than frivolous or abusive litigation. (Dkt. # 99 at 8.) Fogerty v. Fantasy, Inc., 510 U.S. 517 (1994). Defendants now object to this recommendation. (Dkt. # 101.)

## LEGAL STANDARD

I.   Review of Report and Recommendation

The Court must conduct a de novo review of any of the Magistrate Judge's conclusions to which a party has specifically objected. See 28 U.S.C. § 636(b)(1)(C). The objections must specifically identify those findings or

3

recommendations that the party wishes to have the district court consider. Thomas v. Arn, 474 U.S. 140, 151 (1985). A district court need not consider "[f]rivolous, conclusive, or general objections." Battle v. U.S. Parole Comm'n, 834 F.2d 419, 421 (5th Cir. 1987). "A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C).

Findings to which no specific objections are made do not require de novo review; the Court need only determine whether the Recommendation is clearly erroneous or contrary to law. United States v. Wilson, 864 F.2d 1219, 1221 (5th Cir. 1989).

II.     Attorneys' Fees

Courts in the Fifth Circuit apply the lodestar method to calculate attorneys' fees. Black v. SettlePou, P.C., 732 F.3d 492, 502 (5th Cir. 2013) (citing Heidtman v. Cnty. of El Paso, 171 F.3d 1038, 1043 (5th Cir. 1999)). The lodestar amount is calculated by multiplying the number of hours an attorney reasonably spent on the case by an appropriate hourly rate. Id. (citing Smith & Fuller, P.A. v. Cooper Tire & Rubber Co., 685 F.3d 486, 490 (5th Cir. 2012)). The appropriate hourly rate is defined by the market rate in the community in which the district court sits and should reflect the prevailing market rates, not the rates that "lions at

the bar may command." Black, 732 F.3d at 502 (citing Smith & Fuller, 685 F.3d at 490).

Litigants seeking attorneys' fees have the burden to show the reasonableness of the hours billed and that the attorneys exercised reasonable billing judgment. Black, 732 F.3d at 502 (citing Saizan v. Delta Concrete Prods. Co., 448 F.3d 795, 799 (5th Cir. 2006)); Riley v. City of Jackson, 99 F.3d 757, 760 (5th Cir. 1996). The lodestar amount is entitled to a strong presumption of reasonableness. Black, 732 F.3d at 502 (citing Perdue v. Kenny A., 559 U.S. 542, 552 (2010)).

After calculating the lodestar amount, the district court may adjust the amount of attorneys' fees based on the twelve factors set forth in Johnson v. Georgia Highway Express, Inc., 488 F.2d 714 (5th Cir. 1974). Id. Many of these factors are subsumed within the initial calculation of hours reasonably expended at a reasonable hourly rate and should not be double counted. See id.; Jason D.W. v. Houston Indep. School Dist., 158 F.3d 205, 209 (5th Cir. 1998) (internal citations omitted).

III.   Costs

Under Federal Rule of Civil Procedure 54(d)(1), there is a presumption in favor of awarding costs to the prevailing party, which may be overcome only upon a showing of good cause. See Pacheco v. Mineta, 448 F.3d

5

783, 793–94 (5th Cir. 2006). The party seeking costs must demonstrate that the claimed costs are allowable under 28 U.S.C. § 1920 and were necessarily incurred. See Jensen v. Lawler, 338 F. Supp. 2d 739, 744 (S.D. Tex. 2004).

## DISCUSSION

I.    Unobjected-to Portions of the Report and Recommendation

The Court has carefully reviewed the unobjected-to portions of the Report for clear error and finds none. Judge Hightower's cost calculations under 28 U.S.C. § 1920 and 17 U.S.C. § 505 are adequately supported by the record. Accordingly, the Court **ADOPTS** the Report's recommendations as to these findings.

II.   Objections

A.    Objective Reasonableness of Claims

Defendants first object to Judge Hightower's finding that CSA's copyright claims were objectively reasonable, arguing that these claims were meritless *ab initio* under Veeck, which settled the legal question that once a code or standard is adopted into law, it enters the public domain and loses copyright protection. (Dkt. # 101 at 5.) Defendants assert that CSA should have known that under Veeck, its Canadian Electrical Code has been incorporated into law, thereby eliminating any protectable interest. (Id. at 6.) Thus, Defendants contend that no reasonable litigant could have believed CSA's claims would survive, and that

6

CSA's decision to pursue the matter through trial and appeal was objectively unreasonable and designed to extract an improper settlement rather than secure a legitimate judgment. (Id. at 7.)

Judge Hightower concluded that CSA's claims were not so lacking in merit as to be frivolous. (Dkt. # 99 at 5.) The Report noted that CSA distinguished Veeck on the grounds that its code was incorporated into foreign law–thus Canadian Standards became the first decision that ruled on foreign works incorporated into foreign law–and that CSA had initially prevailed in the district court. (Id. at 4–5.) In addition, both this Court and a member of the Court of Appeals panel that heard the appeal in this case agreed with CSA's legal position. Clearly, the legal issues here were complex and in no way was CSA's position frivolous or unreasonable.

Here, the Court agrees with Judge Hightower that CSA's claims possessed factual support and presented a closely divided, unsettled legal question. The controlling standard here is well established: a claim is "objectively reasonable" only if no reasonable litigant could expect success on the merits given the facts and law known at the time of filing. Prof'l Real Estate Inv'rs, Inc. v. Columbia Pictures Indus., Inc., 508 U.S. 59, 60 (1993). This standard requires evaluation based on the circumstances at the outset of the litigation, not on hindsight following an adverse ruling.

7

Veeck did not categorically preclude all claims involving privately developed codes incorporated into foreign laws. In their Objection, Defendants repeatedly cite the Fifth Circuit in Canadian Standards Ass'n v. P.S. Knight Co., 112 F.4th 298 (5th Cir. 2024), noting the panel's majority found that "Veeck was 'explicit and controlling' in this case" and found that "Veeck's holding makes no distinction between the law of the United States and the law of any other jurisdiction." (Dkt. # 101 at 6–7.) However, these assertions reflect the Canadian Standards Court's interpretation of Veeck rather than Veeck's explicit holding, demonstrating that Veeck did not indisputably foreclose CSA's legal theory.

Moreover, the procedural history of this case undermines Defendants' characterization of the claims as baseless. CSA's initial favorable judgment in the district court before reversal by the Fifth Circuit demonstrates that its position was sufficiently plausible to persuade a federal judge after full consideration of the merits. Such circumstances preclude a finding of objective unreasonableness, as the claims raised legitimate questions of law requiring appellate clarification rather than being so devoid of merit that dismissal was inevitable. See Robinson v. Baton Rouge, 2017 WL 2234181, at *3 (M.D. La. May 22, 2017).

On this record, the Court agrees with Judge Hightower's determination that Defendants' have not shown CSA's claims were so lacking in merit as to warrant a finding of objective unreasonableness.

8

Accordingly, this objection is **OVERRULED**.

B. Good Faith Analysis

Defendants next object to Judge Hightower's conclusion that CSA did not litigate in bad faith. (Dkt. # 101 at 9.) They argue that CSA pursued this case with bad motive, citing: (1) the length and expense of litigation; (2) CSA's use of allegedly hostile litigation tactics and (3) CSA's purposed history of bringing meritless claims in multiple countries and taking extreme steps to shut down Defendants' business rather than simply protecting their copyrights. (Id. at 10–11, 13.) Defendants contend that these actions demonstrate CSA's objective was to burden Defendants with unnecessary costs and leverage litigation pressure rather than to secure a legitimate judgment on the merits. (Id. at 15.) In response, CSA asserts that Defendant's allegations are unsupported by the record and that these litigation tactics are commonplace in federal courts. (Dkt. # 102 at 15.)

Judge Hightower found no basis to conclude that CSA acted in bad faith, and this Court agrees. (Dkt. # 99 at 6.) The Report reasoned that CSA's legal arguments and tactics fell within the scope of reasonable litigation and determined that nothing in the record established improper motive or intent to harass, needlessly increase litigation costs or purposely deprive Defendants of business beyond protecting their copyrights. (Id.)

9

As indicated above, the Court agrees with Judge Hightower's assessment. To establish bad faith, parties must meet a high threshold requiring more than aggressive litigation. Showing bad faith involves showing conduct that is dishonest, intentionally misleading, or undertaken with an improper purpose beyond seeking legal relief for a claim. See Grand Hous., Inc. v. Bombardier Capital, Inc., 2005 WL 673267, at *4 (5th Cir. Mar. 23, 2005). The record here does not meet that standard.

As noted above, CSA's litigation strategy advanced arguments this Court initially accepted, strongly undermining any inference that the claims were pursued for an improper purpose. Defendants' reliance on the ultimate adverse outcome at the appellate level as proof of bad faith incorrectly conflates an unfavorable judgment with wrongful intent. Further, as noted above, there was a dissent from the majority ruling. Thus, the record in this case reflects legal arguments presented within established procedural frameworks rather than the type of egregious misconduct warranting a bad faith finding.

Given the procedural history, the legal arguments advanced through litigation, and the absence of concrete evidence of bad faith, the Court finds that Judge Hightower's determination is consistent with governing law.

Accordingly, this objection is **OVERRULED**.

C.   Copyright Act Policy Goals

Finally, Defendants object to Judge Hightower's conclusion that awarding attorneys' fees to CSA would not advance the purposes of the Copyright Act. (Dkt. # 101 at 6.) They assert that one of the act's central objectives is deterrence–awarding fees here would serve to deter meritless or overreaching claims, such as those they argue CSA pursued in this litigation. (Id. at 11.) Defendants maintain that CSA's legal theories were frivolous under direct and controlling precedent, thus a fee award in Defendants' favor would discourage similarly situated plaintiffs from pressing claims that lack merit. (Id. at 6.) Defendants further assert that an award of attorney's fees would promote compensation for prevailing defendants who have incurred substantial expense in defending against such claims. (Id. at 12.)

Judge Hightower found that the balance of the relevant factors weighed against awarding fees. (Dkt. # 99 at 7.) As stated above, the Report concluded CSA's claims were reasonable and brought in good faith. (Id. at 5–6.) Accordingly, Judge Hightower determined that a fee award would not meaningfully advance compensation and deterrence–a goal of the Copyright Act– because penalizing a party for bringing a claim that is not frivolous and grounded

11

in legitimate legal question risks discouraging parties from seeking judicial resolution of disputes in good faith.  (Id. at 7.)

The Court agrees.  In Fogerty, the Supreme Court identified compensation and deterrence as relevant considerations in determining whether to award fees under 17 U.S.C. § 505, but emphasized that such awards are discretionary and should be guided by equitable factors.  Fogerty, 510 U.S. at 534, n.5.  The aim is not to punish an unsuccessful litigant for losing, but to encourage the assertion of meritorious claims and defenses while discouraging baseless ones.

Here, CSA's claims required appellate clarification of unsettled issues at the intersection of copyright law and public law incorporation in foreign jurisdictions.  Deterring parties from bringing such claims would undermine, rather than advance, the Act's purpose of promoting the development of legal protections in copyright law.  See McKinley v. Raye, 1998 WL 119540, at *4 (N.D. Tex. Mar. 10, 1998).  The record reflects that CSA presented novel legal questions of first impression regarding foreign incorporation, warranting judicial consideration rather than deterrence.

Furthermore, an award of attorney's fees would not enhance the Copyright Act's compensation goals in this case.  Costs that Defendants incurred resulted from defending a case that was sufficiently complex and close enough to warrant full merit adjudication.  Shifting fees to compensate a prevailing defendant

would risk discouraging legitimate claims that contribute to the refinement of copyright protections.  See Guzman v. Hacienda Records and Recording Studio, Inc., 2015 WL 4612583, at *6 (S.D. Tex. July 31, 2025).

Accordingly, the Court finds that Judge Hightower's analysis is consistent with Fogerty and the discretionary framework of § 505.  Defendants have not shown that a fee award here would further the Copyright Act's objectives of compensation and deterrence.

This objection is therefore **OVERRULED**.

## CONCLUSION

For the reasons stated above, the Court **ADOPTS** U.S. Magistrate Judge Susan Hightower's Report and Recommendation in full as the opinion of this Court.  (Dkt. # 99.)  The Application for Attorneys' Fees and Costs is **GRANTED IN PART AND DENIED IN PART.**  (Dkt. # 93.)  The Court **AWARDS** Defendants costs in the amount of **$1,707.35.**

**IT IS SO ORDERED.**

**SIGNED**: Austin, Texas, August 18, 2025.

David Alan Ezra
Senior United States District Judge